UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**TONY JOSEPH LEBOUEF**                                     **CIVIL ACTION**

**VERSUS**                                                  **NO. 20-2260**

**TERREBONNE PARISH CRIMINAL**                              **SECTION: "I"(3)**
**JUSTICE COMPLEX, ET AL.**

## PARTIAL REPORT AND RECOMMENDATION

Tony Joseph LeBouef, a state pretrial detainee, filed this federal civil action pursuant to 42 U.S.C. § 1983 alleging that insufficient measures were being taken to protect him from COVID-19. In his original complaint, he sued only the physical facility in which he was confined, namely the Terrebonne Parish Criminal Justice Complex.[1] The undersigned United States Magistrate Judge then issued an Order informing plaintiff that the jail building was not a "person" and, therefore, not a proper defendant in a § 1983 action;[2] however, plaintiff was granted leave to file an amended complaint to identify a proper defendant.[3] Plaintiff then filed an amended complaint adding Major Stephen Bergeron, Sheriff Jerry Larpenter, and Richard Pete Neal as defendants.[4]

The Terrebonne Parish Criminal Justice Complex and defendant Neal have now filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5] Plaintiff

---

[1] Rec. Doc. 1.
[2] In pertinent part, the referenced federal statute provides:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

28 U.S.C. § 1983 (emphasis added).
[3] Rec. Doc. 4.
[4] Rec. Doc. 5.
[5] Rec. Doc. 14. **The remaining defendants have not joined in the motion, and this Report does not address the claims asserted against them.**

was ordered to file a response to that motion by no later than January 13, 2021.[6] To date, no such response has been filed.

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is **plausible on its face**. Factual allegations must be enough to raise a right to relief **above the speculative level**, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (emphasis added; footnote, citation, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a **sheer possibility** that a defendant has acted unlawfully. **Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief**.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added; citations and quotation marks omitted).

### I. Claims Against the Terrebonne Parish Criminal Justice Complex

In the motion to dismiss, the defendants argue that the Terrebonne Parish Criminal Justice Complex is not a proper defendant. That is correct. "The Terrebonne Parish Criminal Justice Complex simply is not a proper defendant under any circumstances. A jail is merely a building, not a 'person' subject to suit under 42 U.S.C. § 1983." Coleman v. Terrebonne Parish Criminal

---
[6] Rec. Doc. 15.

Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *5 (E.D. La. Nov. 13, 2013) (quotation marks and brackets omitted); accord Authement v. Terrebonne Parish Sheriff's Office, Civ. Action No. 09-5837, 2009 WL 4782368, at *4 (E.D. La. Dec. 3, 2009); Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *3 (E.D. La. Oct. 23, 2009). Accordingly, the claims against that defendant must be dismissed.

## II. Claims Against Richard Pete Neal

In the amended complaint, plaintiff's statement of his claim against Neal, in its entirety, reads: "Dr. Richard Pete Neal: Is responsible for the medical negligence in this facility not providing Inmates with proper P.P.E., NO Handsanitizer, they don't sanitize phones or shower but weekly and allowing new inmates in jail, masked wasn't given till late april or early may."[7]

### A. Official-Capacity Claims

Neal first argues that the foregoing allegations are insufficient to state a claim against him in his official capacity. That is likewise correct for the following reasons.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Neal would in reality be a claim against the local governmental body itself. However, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, **a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted**. To satisfy the cause in fact requirement, **a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom**. The description of a policy or custom and its relationship to the

---

[7] Rec. Doc. 5, p. 1. Although plaintiff refers to Neal in the amended complaint as a doctor, it is the Court's understanding that Neal serves as the jail's medical administrator but is not himself a physician. Nonetheless, that is immaterial for the purposes of this opinion.

underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added; citations, quotation marks, and brackets omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 F. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom. Therefore, if he is asserting a claim against Neal in his official capacity, plaintiff's allegations fall short of what is required to state a proper official-capacity claim.

### B. Individual-Capacity Claims

Neal next argues that plaintiff's allegations are also insufficient to state a claim against him in his individual capacity. In his motion, Neal correctly notes that "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). He further correctly points out that "[p]laintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).

Neal then proceeds to opine that that the allegations in the amended complaint do not expressly state that he was **personally** involved in the conduct of which plaintiff complains.

4

However, it must be noted that the allegations listing the purported misconduct **immediately follow Neal's name**. Clearly, therefore, the only logical inference is that plaintiff, who is proceeding *pro se*, is alleging that it was Neal himself who personally took (or failed to take) the actions in question.[8] While plaintiff may ultimately be incorrect in assuming that Neal was personally involved, that is an issue for another day. The question at this stage of the proceeding is simply whether plaintiff has **alleged** that Neal was personally involved, and the undersigned concludes that plaintiff's allegations suffice to meet that admittedly very low bar.

Neal next argues that plaintiff's allegations fall short of what is required to state a cognizable claim of deliberate indifference. Plaintiff's claims, fairly construed, are ones alleging that Neal has failed to take adequate measures to protect plaintiff from contracting from COVID-19. Given the nature of plaintiff's claims, deliberate indifference is in fact required for his claims to be cognizable.

Pursuant to the Fourteenth Amendment, penal officials clearly have a duty to provide a pretrial detainee in their custody "with basic human needs, including … protection from harm, during [his] confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). Regarding such claims, the United States Fifth Circuit Court of Appeals has further held that "[t]o establish a failure-to-protect claim under § 1983, [an inmate] must show that he was incarcerated under conditions posing a **substantial risk of serious harm** and that prison officials were **deliberately indifferent** to his need for protection." Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (emphasis added).

---

[8] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

The first prong poses no great obstacle in a COVID-19 case. "There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates." Valentine v. Collier, 956 F.3d 797, 801 (5th Cir. 2020).

However, the second prong, which requires a showing of "deliberate indifference," is normally more problematic for plaintiffs because "[d]eliberate indifference is an extremely high standard to meet." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). Indeed, "[i]n order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Neals, 59 F.3d at 533 (internal quotation marks omitted). Accordingly, "[a]ctual knowledge **and** appreciation of the risk are required." Smith v. Jaramillo, 394 F. App'x 183, 185 (5th Cir. 2010) (emphasis added). Moreover, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. To reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.'" Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 420 (5th Cir. 2017) (citation and quotation marks omitted). Further, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008). Lastly, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they **responded reasonably** to the risk, **even if the harm ultimately was not averted**." Farmer v. Brennan, 511 U.S. 825, 844 (1994) (emphasis added).

Therefore, the question here is whether plaintiff's allegations, if true, would be indicative of deliberate indifference to the risk of him contracting COVID-19 in the jail's communal living

6

conditions. The Court concludes that, given the circumstances, some are not; however, others plausibly are.

As noted, plaintiff first alleges that inmates were not provided with "proper P.P.E.," noting that masks were not distributed "till **late april or early may**."[9] Even assuming that is true, it is not indicative of deliberate indifference in light of the time frame involved. For example, in a case arising out the Idaho State Correctional Center, a prisoner asserted a § 1983 claim predicated on an allegation that visitors, staff, and inmates were not required to wear masks from **March to June of 2020**. United States District Judge B. Lynn Winmill determined that allegation was insufficient to state a plausible failure-to-protect claim, noting:

> That prison officials did not require face masks **for the first few months of the pandemic** does not establish deliberate indifference. What we know about COVID-19 and the spread of the novel coronavirus is constantly changing, as new information is released by medical researchers, agencies, and other authorities. At first, it was unclear whether cloth face masks would be particularly effective in curbing the spread of the virus. Of course, we now know that such masks do help reduce the risk of transmission. **But it was not unreasonable for prison officials to refrain from requiring face masks in the early months of the pandemic, particularly when access to such masks was limited.**

Kesling v. Tewalt, Case No. 1:20-cv-00334, 2020 WL 4496495, at *6 (D. Idaho Aug. 4, 2020) (emphasis added).[10] The same is true in this case, where plaintiff alleges that masks were not distributed until late April or early May. Therefore, plaintiff's claims concerning the belated distribution of personal protective equipment should be dismissed. See Luke v. Larpenter, Civ. Action No. 20-1617, 2020 WL 8082414, at *6 (E.D. La. Oct. 23, 2020) (van Meerveld, M.J.), adopted, 2021 WL 88917 (Africk, J.).

---

[9] Rec. Doc. 5, p. 1 (emphasis added).
[10] See also Mayfield v. Peissig, No. 20-cv-269, 2020 WL 3414757, at *2 (W.D. Wis. June 22, 2020) ("[P]laintiff's general allegations about a lack of social distancing and inconsistent mask use at the prison do not suggest that the conditions of plaintiff's confinement are inhumane or that defendants are acting with deliberate indifference to a significant risk of harm to plaintiff's health or safety."), appeal dismissed, No. 20-1982, 2020 WL 7238281 (7th Cir. Aug. 12, 2020).

7

The Court likewise finds that plaintiff's allegations that Neal failed to take the drastic action of barring admission of new inmates into the jail during the pandemic also falls short of stating a plausible claim of deliberate indifference. Even if the Court assumes that Neal had the authority to unilaterally prevent the admittance of new inmates into the jail, a proposition which strikes the Court as unlikely given that the jail is ultimately operated by the **parish sheriff**,[11] Neal's failure to do so still would not be sufficient for the Court to infer anything more than "the **mere possibility** of misconduct." Iqbal, 556 U.S. at 679 (emphasis added). For example, there is no suggestion that the newly admitted inmates were known or suspected to be infected – or, alternatively, if they were, that inadequate measures were taken to prevent them from spreading the disease within the facility once admitted. "The fact that a jail continues to accept new inmates during a pandemic simply is not, in and of itself, enough for this Court to infer the existence of a plausible constitutional violation." See Luke, 2020 WL 8082414, at *5.

That said, plaintiff's allegations that other seemingly minimal measures were not taken to protect the inmates against exposure, such as providing a means for inmates to sanitize their hands and for the disinfection of shared telephones and communal showers, strikes the Court as fundamentally different. Admittedly, this pandemic has raged in this country for only approximately one year, and so there is scant jurisprudence defining the precise point at which a facility's inattention to the dangers posed by COVID-19 crosses the line separating non-cognizable negligence claims[12] from actionable deliberate indifference claims. Moreover, it is evident that federal courts will grant penal officials substantial deference to decide which COVID-19

---

[11] Louisiana law provides that "[e]ach sheriff shall be keeper of the public jail of his parish ...." La. Rev. Stat. Ann. §§ 13:5539(C) and 15:704. It, therefore, seems more likely that the sheriff, not the jail unit's medical administrator, would have the final say as to whether new inmates are accepted into the jail.

[12] "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." Baker v. McCollan, 443 U.S. 137, 146 (1979).

8

prevention measures are appropriate in their particular facilities. For example, the United States Fifth Circuit Court of Appeals has held that a facility's mere failure to comply with CDC guidelines does not rise to the level of a constitutional violation – and further held that the Constitution does not require penal officials to implement "long-term changes" or sanitize facilities to "the maximum extent required to avoid the spread of COVID-19." Valentine v. Collier, 978 F.3d 154, 164 (5th Cir. 2020). However, it does not necessarily follow that officials are therefore relieved of **any** obligation to take even "minimal" precautionary measures.

Nevertheless, in order for the Court assess whether the failure to provide hand-sanitizer and to more adequately disinfect common areas in this case is actionable requires more information than has been provided to the Court at this point. For example, the failure to take a particular precaution, even one which would seemingly require little effort or expense, might still be reasonable **if** the official has instead taken other **alternative** appropriate measures to address the risk posed to the inmate. Normally, circumstances in their totality are determinative in a given case, not the failure to take a specific precaution in isolation.[13]

And, of course, a plaintiff must, as always, sue the **correct** official with respect to his claims. Here, it is not readily apparent that **Neal** is in fact the appropriate official to sue for the alleged failure to provide that inmates with hand-sanitizer and to adequately disinfect communal areas. While that is certainly possible, it strikes the court as unlikely. As noted, Neal is the jail's medical director, and it is not obvious that one with such a limited role would have the

---

[13] See, e.g., Mays v. Dart, 974 F.3d 810, 820 (7th Cir. 2020) ("The district court then went on to emphasize social distancing and the Sheriff's efforts to implement social distancing to the exclusion of the Sheriff's other actions. This analysis incorrectly ignored the totality of the circumstances. It may very well be the case that a particular aspect of an action is so lacking that the failing on this one factor will lead a court to correctly conclude the entire course of challenged conduct was objectively unreasonable. It may also be that some actions or inactions are more consequential than others. But that does not mean that the court should evaluate each aspect of the disputed actions in a vacuum, especially in a case involving a systemic claim like here. Rather, the court must consider the total of the circumstances surrounding the challenged action.").

responsibility – or indeed even the ability – to provide hand-sanitizer to inmates or to disinfect non-medical areas of the jail, such as the telephones or showers. Nevertheless, when plaintiff's *pro se* complaint is broadly construed, it essentially **alleges** that Neal had such authority, and the Court has no basis for saying that is untrue.[14]

For all of these reasons, the Court finds that when plaintiff's allegations are **accepted as true and viewed in the light most favorable to him**, as they must be with respect to a Rule 12(b)(6) motion to dismiss, it simply cannot be said that his individual-capacity claim alleging that his right to be protected from a deadly and highly contagious disease was violated by Neal's purported failure to provide hand-sanitizer and adequately disinfect the telephones and showers is inherently **implausible on its face**. Therefore, at least for now, the undersigned recommends that aspect of plaintiff's claim should be allowed to proceed pending further development.

Lastly, the Court notes that the foregoing recommendation is not changed simply because Neal has invoked qualified immunity. Regarding qualified immunity, the United States Fifth Circuit Court of Appeals has held:

> [T]he doctrine of qualified immunity attempts to balance two competing societal interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. These interests are distilled into a legal standard, an affirmative defense, that shields public officials sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Joseph *ex rel.* Joseph v. Bartlett, 981 F.3d 319, 328 (5th Cir. 2020) (footnotes and quotation marks omitted).

---

[14] The Court notes that Neal does not argue in his motion that he lacks such authority. But, of course, that is not determinative. Even if that were Neal's defense, it would be more appropriately asserted in a properly supported motion for summary judgment challenging the sufficiency of plaintiff's **evidence** concerning the underlying facts and Neal's role, not in a motion to dismiss which focuses solely on the sufficiency of plaintiff's **allegations**.

COVID-19 is, obviously, of recent origin, and so the dearth of jurisprudence concerning the disease might lead one to argue that a plaintiff cannot show that the law regarding what is – and is not – an appropriate response to the pandemic has not yet been "clearly established" for the purposes of qualified immunity. However, such argument would be unpersuasive, because "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). Further, a United States Magistrate Judge in Oregon recently concisely explained why the novelty of the COVID-19 pandemic does not automatically result in qualified immunity for penal officials alleged to have responded inadequately to protect their inmates:

> Existing precedent clearly establishes the right of an individual in custody to protection from heightened exposure to a serious communicable disease. See, e.g., Helling v. McKinney, 509 U.S. 25, 33 (1993) (finding prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease" under the Eighth Amendment); see also Hutto v. Finney, 437 U.S. 678, 682-83 (1978) (affirming a finding of an Eighth Amendment violation where a facility housed individuals in crowded cells with others suffering from infectious diseases, such as Hepatitis and venereal disease, and the individuals' "mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening"); Andrews v. Cervantes, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an alleged policy of not screening inmates for infectious diseases – HIV, Hepatitis C, and Heliobacter pylori – and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C"); Trevizo v. Webster, No. CV 17-5868-MWF (KS), 2018 WL 5917858, at *4 (C.D. Cal. Sept. 6, 2018) ("It is well accepted that such 'substantial risks of harm' include 'exposure of inmates to a serious, communicable disease[,]'" including MRSA) (citing Helling, 509 U.S. at 33); see also Loftin v. Dalessandri, 3 F. App'x 658, 663 (10th Cir. 2001) (recognizing an Eighth Amendment claim for knowingly housing the defendant in a cell with individuals who had tested positive for tuberculosis); cf. Farmer v. Brennan, 511 U.S. 825, 843 (1994) ("The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health[.]'" (citing Helling, 509 U.S. at 35)). "For purposes of qualified immunity, that legal duty need not be litigated and then established disease by disease or injury by injury." Estate of Clark v. Walker, 865 F.3d 544, 553 (7th Cir. 2017).
> … The law does not support a finding of qualified immunity for government officials who fail to protect individuals in their custody from a new

11

serious communicable disease, as opposed to a serious communicable disease of which they were previously aware. To hold otherwise as a matter of law would provide qualified immunity to Defendants even if they had done nothing in response to the COVID-19 pandemic.

Maney v. Brown, Civ. Action No. 6:20-cv-00570, 2020 WL 7364977, at *5-6 (D. Ore. Dec. 15, 2020) (footnote omitted).

## RECOMMENDATION

It is therefore **RECOMMENDED** the motion to dismiss filed by Terrebonne Parish Criminal Justice Complex and Richard Neal, Rec. Doc. 14, be **GRANTED IN PART AND DENIED IN PART** as follows:

It is **RECOMMENDED** that the motion be **GRANTED** as to plaintiff's claims against the Terrebonne Parish Criminal Justice Complex and that the claims against that defendant be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion be **GRANTED** as to plaintiff's official-capacity claims against Richard Pete Neal and that those claims be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion be **DENIED** as to plaintiff's failure-to-protect claim asserted against Richard Pete Neal in his individual capacity based on his alleged failure to provide hand-sanitizer to inmates and to adequately disinfect communal areas at the jail.

It is **FURTHER RECOMMENDED** that the motion be **GRANTED** as to all other aspects of plaintiff's individual-capacity claims against Richard Pete Neal and that those aspects of his claims be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___1st___ day of March, 2021.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**